[Cite as *State v. Powell*, 2014-Ohio-5541.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2014CA00071 |
| | : | |
| JACOB D. POWELL | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:         Appeal from the Stark County Court of
                                 Common Pleas, Case No. 2013CR1722



JUDGMENT:                        AFFIRMED



DATE OF JUDGMENT ENTRY:          December 15, 2014



APPEARANCES:

For Plaintiff-Appellee:                  For Defendant-Appellant:

JOHN D. FERRERO                          MARY G. WARLOP
STARK COUNTY PROSECUTOR                  Abney Law Office, LLC
                                         116 Cleveland Ave. NW, Suite 500
RONALD MARK CALDWELL                     Canton, OH 44702
110 Central Plaza South, Suite 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Defendant-Appellant Jacob D. Powell appeals his April 14, 2014 conviction and sentence by the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   On December 10, 2013, the Stark County Grand Jury indicted Defendant-Appellant Jacob D. Powell on one count of Felonious Assault, a felony of the second degree in violation of R.C. 2903.11(A)(1), and one count of Domestic Violence, a felony of the fifth degree in violation of R.C. 2919.25(A). Powell entered a plea of not guilty. The matter proceeded to a jury trial on April 2, 2014. The following facts were adduced at trial.

{¶3}   On November 3, 2013, Powell resided with his girlfriend, Jennifer Herning, and their child in an apartment located in Canton, Ohio. Herning was the mother of Powell's one-year old child. Herning was seven months pregnant with Powell's second child.

{¶4}   On the evening on November 3, 2013, Powell was asleep in his "man cave" in the basement of the apartment. Herning and the child were upstairs sleeping. The child woke up and would not go back to sleep. To help the child sleep, Herning and Powell would usually drive the child in the car.

{¶5}   Herning knocked on the door to Powell's room in the basement and then banged on it to get Powell's attention so he could take Herning and the child for a drive. The door to Powell's room had a latch on the inside and the door would not open. Herning kicked the door and the latch came open. Herning found Powell sleeping in his

room. Herning tried to wake Powell up by talking to him and moving him, but he would not wake up. The child was upstairs crying, so Herning went upstairs to check on the child and then came back downstairs to get Powell. Herning was able to wake Powell and he said he was getting up. Herning went back upstairs to get the child. She came downstairs and saw that Powell had fallen back to sleep. Herning tried to wake him up. She went upstairs and stomped on the floor to get Powell's attention. Powell woke up and came upstairs.

{¶6} Herning explained that they needed to go for a drive in the car to put the child to sleep. Powell attempted to lie down with the child to put the child back to sleep, but the child woke up again. Herning insisted that they needed to drive the child in the car and she went downstairs to get Powell's glasses so he could see to drive. When Herning came back upstairs, she heard Powell swearing and she thought Powell was drunk. Herning went to use the bathroom and Powell followed her into the bathroom.

{¶7} After Herning finished using the bathroom, Powell slammed the bathroom door shut and Herning retreated to the wall. Powell began hitting her about the head with his fists. Herning asked Powell to let her out to check on the child who could fall down the stairs. Powell let her out of the bathroom and Herning went downstairs to latch the basement door. Herning went to the mudroom where Powell followed her and he resumed hitting her. Herning punched Powell once, but she fell to the floor and she grabbed onto Powell's leg. Powell tripped and fell, but he got up. Herning threw a plastic storage container at him. Herning got up and went to the living room, sat on a chair, and attempted to call for help on her cell phone.

{¶8} Powell grabbed her cell phone away from her and threw the plastic storage container at her. The container bounced off Herning and hit the child. Herning checked on the child and the child was not hurt.

{¶9} Powell then grabbed Herning and pinned her to the ground. She was lying on her back and Powell was sitting on her stomach. He started choking her with his hands. When he let go for a moment, Herning told him to get off her belly and he got off her stomach, but continued to choke her. Herning vomited while he was choking her but she was able to turn her head to clear her mouth.

{¶10} Powell let go and walked away. Herning next recalled they were in the bedroom. Powell started choking her again and screaming at her. Herning recalled being on the ground, while Powell choked her from behind and slammed her head into the ground by her hair. He screamed at her, punched her, and kicked her on the right side of her body. He stomped on her back. He bit her right finger, her cheek, and the back of her head. He walked out of the bedroom and then he returned to continue choking and punching Herning. Herning was in front of the bed and lying on the ground. Powell kicked her in the chest. Herning moved so Powell would not kick her in the stomach. After Powell let her go at one point, Herning saw her child standing at the bed and looking at her mother.

{¶11} Powell left the room and went to the basement. Herning left the house and ran to the neighbor's home. She knocked on the door and the neighbor let her in. Herning told her neighbor that her boyfriend had beaten her up and she needed medical help. The neighbor called 911. Herning ran back to her home to get her child. Powell had gone outside so Herning entered the apartment and locked the doors. Powell

smashed a window in the apartment. Herning grabbed the child, went out the back door, and fled back to the neighbor's home.

{¶12} While waiting for the paramedics, the neighbor saw Herning bleeding profusely and her blood was getting on the floor. The neighbor saw Powell across the street. Powell told the neighbor that he had been asleep when Herning attacked him. The neighbor asked Powell to leave. When the police arrived at the neighbor's home, Powell drove away.

{¶13} City of Canton Police Officer Philip Johnson and his partner responded to the 911 call. When the officers arrived, the paramedics were already treating Herning. When Johnson spoke with Herning, she was crying and hysterical. The officer noticed that Herning was covered with blood and vomit. Johnson observed multiple bruises on Herning's face and body, as well as teeth marks on her cheek. Johnson tried to get a written statement from Herning but she was too upset. Later, at the hospital, the officers told Herning's mother that she could write the statement for her daughter.

{¶14} One of the paramedics treating Herning told Johnson that Powell was going to leave the area. Johnson went outside to stop Powell but he got into his car and drove away. The officers pursued Powell and eventually pulled him over. Powell was covered in blood and crying. He was placed under arrest and he complained of pain throughout his body. Johnson noticed scratches on Powell's arm and he was taken to Aultman Hospital. Powell was cleared with minor abrasions.

{¶15} Herning was admitted to Mercy Medical Center for several days due to her injuries and concerns for her pregnancy. The fetus did not appear to be injured.

{¶16} Shawanna Musick, a forensic nurse with Mercy Medical Center, took Herning's medical history. Musick's examination showed petechia, the bursting of blood vessels, in Herning's eyes, ear canals, face, chest, and neck. Musick testified that petechia occurred within 15 to 30 seconds of strangulation. The blood vessels burst due to lack of oxygen. Musick testified the lack of oxygen to the mother could also harm the fetus. Musick also observed bruising, swelling, and bite marks on Herning's body. Herning's injuries stuck out to Musick because she usually observed handprints due to strangulation. In Herning's case, there was so much swelling in her neck that she felt there was a lot of force applied. Musick testified that she was surprised Herning was still alive.

{¶17} At the closing of the State's case, Powell moved for dismissal of the charges pursuant to Crim.R. 29. The trial court denied the motion. The defense rested and renewed its Crim.R. 29 motion. The trial court denied the motion.

{¶18} The jury deliberated and returned a verdict of guilty on both charges.

{¶19} A sentencing hearing was held on April 7, 2014. The trial court sentenced Powell to five years for his conviction for Felonious Assault. The trial court merged the Domestic Violence conviction with the Felonious Assault conviction.

{¶20} Powell now appeals.

**ASSIGNMENT OF ERROR**

{¶21} Powell raises one Assignment of Error:

{¶22} "I. THE JURY'S FINDING OF GUILT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

{¶23} In his sole Assignment of Error, Powell argues his conviction is against the manifest weight and sufficiency of the evidence. We disagree.

{¶24} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶25} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the

evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶26} Powell was charged with and convicted of one count of Felonious Assault, in violation of R.C. 2903.11(A)(1). The statute states that, "[n]o person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn." "Serious physical harm" is defined by R.C. 2901.01(A)(5) as:

(5) "Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶27} Powell was also convicted of a violation of R.C. 2919.25(A). The statute states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Powell does not dispute that Herning was a "family or household member" for purposes of the domestic violence statute.

{¶28} Powell argues the evidence demonstrates that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

He states that Herning admitted to attempting to wake Powell by physically shaking him and kicking him. He also argues that Herning gave multiple statements to the police about the incident, including a statement that was written by her mother.

{¶29} The evidence shows that Herning did attempt to wake Powell, but there is no evidence that Powell suffered any injury from her actions. Powell's only noted injury was minor abrasions he suffered when he broke the glass in the apartment attempting to gain entrance when Herning locked the doors. The evidence in this case clearly demonstrates Powell responded to being awakened by Herning by punching, biting, kicking, and strangling Herning in the presence of their one-year old child. The witnesses in this case observed Herning covered in blood and vomit after the incident, with multiple bruises and bite marks on her body. Herning required a hospital stay due to her injuries and because of the possible harm to the fetus.

{¶30} We find reasonable triers of fact could have found, beyond a reasonable doubt, Powell knowingly caused serious physical harm to Herning for purposes of R.C. 2903.11(A)(1) and knowingly caused or attempted to cause physical harm to a family or household member for purposes of R.C. 2919.25(A). Powell's convictions for Felonious Assault and Domestic Violence are supported by sufficient evidence.

{¶31} Further, upon review of the trial record we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that Powell's conviction be reversed and a new trial ordered.

{¶32} Powell's sole Assignment of Error is overruled.

## CONCLUSION

{¶33} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and.

Hoffman, J., concur.